IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| **DBMP LLC,**<br><br>**Appellant,**<br><br>**v.**<br><br>**OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS, ET AL.,**<br><br>**Appellees.** | **Civil Action Nos.**<br>**3:26-cv-00441-KDB**<br>**3:26-cv-00442-KDB**<br>**3:26-cv-00443-KDB**<br>**3:26-cv-00444-KDB**<br>**3:26-cv-00445-KDB**<br>**3:26-cv-00446-KDB** |
| **In re**<br><br>**DBMP LLC**<br><br>**Debtor** | **Chapter 11**<br>**Case No. 20-30080 (AAE)** |

## MEMORANDUM AND ORDER

**THIS MATTER** is before the Court on DBMP LLC's Motion for Leave to Appeal the Bankruptcy Court's Order Partially Granting and Sustaining and Partially Denying Plaintiffs' Privilege Motion and Defendants' Objection (Doc. Nos. 3390, 3391; Adv. Pro. No. 21-03023, Doc. No. 411; Adv. Pro. No. 22-03000, Doc. No. 348; Adv. Pro. No. 22-03001, Doc. No. 317) (the "Privilege Order"), as amended and clarified by its Order Partially Granting and Partially Denying Motion (Doc. No. 3464; Adv. Pro. No. 21-03023, Doc. No. 451; Adv. Pro. No. 22-03000, Doc. No. 390; Adv. Pro. No. 22-03001, Doc. No. 357) (the "Reconsideration Order"). The Court

has carefully considered this motion, the orders appealed from, the Parties' briefs and oral argument on the motion from the Parties' counsel on August 18, 2026. For the reasons discussed below – primarily, the Court's conclusion that DBMP has not sufficiently established that resolving the alleged controlling question of law now will materially advance the ultimate termination of the relevant Adversary Proceedings and Bankruptcy – the Court will exercise its discretion to **DENY** the motion.

## I. LEGAL STANDARD

DBMP LLC, ("DBMP" or the "Debtor") is the debtor in the Chapter 11 bankruptcy case (the "Bankruptcy") captioned above. It has moved under 28 U.S.C. § 158(a)(3) and Rule 8004 of the Federal Rules of Bankruptcy Procedure for leave to appeal two orders of the Bankruptcy Court relating to the Parties' dispute over whether numerous documents requested by the Appellee Official Committee of Asbestos Personal Injury Claimants ("Asbestos Claimants" or "Plaintiffs") in the Bankruptcy and various related Adversary Proceedings may be withheld from discovery as privileged attorney-client communications or protected by the attorney work product doctrine.

The Parties do not dispute the legal standards governing a requested interlocutory appeal from the Bankruptcy Court to this Court. District courts have jurisdiction to hear appeals from "final judgments, orders, and decrees" of the bankruptcy courts. 28 U.S.C. § 158(a)(1). Alternatively, parties may seek appellate review of interlocutory orders "with leave of the court." 28 U.S.C. § 158(a)(3). "In seeking leave to appeal an interlocutory order or decision [of a bankruptcy court], the appellant must demonstrate that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978); *Thomas v. Grigsby*, 556 B.R. 714, 720 (D. Md. 2016); *see also United States ex rel. Michaels v. Agape Senior Cmty., Inc.*,

848 F.3d 330, 340–41 (4th Cir. 2017). "Whether or not to grant leave to appeal an interlocutory order is a discretionary call of the district court." *In re Jackson*, 190 B.R. 808, 810 (W.D. Va. 1995).

While granting leave is discretionary, there is an established framework for considering when to exercise the Court's discretion. Because Section 158(a)(3) and the Bankruptcy Rules do not specify a standard for when to grant leave, courts borrow the analysis from 28 U.S.C. § 1292(b), which governs the process for a district court to certify one of its own interlocutory orders for appeal to the Court of Appeals. *See Off. Comm. of Asbestos Claimants v. Semian*, 809 F. Supp. 3d 383, 391 (W.D.N.C. 2025); *KPMG Peat Marwick, L.L.P. v. Est. of Nelco, Ltd., Inc*., 250 B.R. 74, 78 (E.D. Va. 2000).

Under § 1292(b), courts consider whether: (1) the appeal involves a controlling question of law; (2) regarding which there is substantial ground for difference of opinion; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *see Semian*, 809 F. Supp. 3d at 391; *Adams*, 2021 WL 394842, at *2; *First Owners' Ass'n of Forty Six Hundred v. Gordon Props., LLC*, 470 B.R. 364, 371 (E.D. Va. 2012). All three elements must be satisfied, and "[t]he appellant bears the burden of establishing each factor." *LG Funding, LLC v. JCS Hosp., LLC*, No. 7:24-CV00912-M, 2024 WL 4660833, at *1 (E.D.N.C. Nov. 1, 2024). Further, the Fourth Circuit has cautioned that 28 U.S.C. § 1292(b) should be used "sparingly," and its requirements are to be "strictly construed." *Michaels*, 848 F.3d at 340 (quoting *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989)); *Thomas*, 556 B.R. at 720.

## II. FACTS AND PROCEDURAL HISTORY

The Bankruptcy and related Adversary Proceedings in which this matter arises have a long history, which is amply described by the Parties and need only be summarized here. *See* Doc. Nos.

2 at 2-7, 3 at 4-11. DBMP initiated its voluntary Chapter 11 bankruptcy in 2020, shortly following a corporate restructuring in 2019, in which DBMP and CertainTeed LLC ("New CertainTeed") were formed. *Herlihy v. DBMP, LLC*, 167 F.4th 142, 146-147 (4th Cir. 2026). As part of the restructuring, DBMP and New CertainTeed "entered into an uncapped [F]unding [A]greement that obligated [New CertainTeed] to satisfy DBMP's asbestos-related liabilities and, in case of bankruptcy, to pay for all costs related to administering a Chapter 11 reorganization," including funding "a trust" under § 524(g) (the Bankruptcy Code provision enacted to manage and resolve ongoing and future asbestos-related claims) to the extent DBMP's assets are insufficient to do so. *Id*. at 147.

The Privilege Order arises out of three Adversary Proceedings filed in the Bankruptcy. The plaintiffs in each Adversary Proceeding are the Asbestos Claimants and the Future Claimants' Representative. One of the Adversary Proceedings seeks to unwind the restructuring through a substantive consolidation of the Debtor and New CertainTeed. [No. 21-03023.] Another asserts fraudulent-transfer claims related to the restructuring, including alleging that it left the Debtor insolvent. [No. 22-03000.] And the third asserts breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, and civil conspiracy in connection with the restructuring (as well as, again, that the restructuring left the Debtor insolvent). [No. 22-03001.] Discovery in the first two is ongoing, while the third is stayed pending resolution of the fraudulent-transfer allegations. No trial date has been set. In the main bankruptcy case, a hearing to estimate DBMP's asbestos-related liabilities is set for Fall 2028, following the close of discovery.

In the Adversary Proceedings, the Plaintiffs moved to compel production of approximately 3,000 documents over which DBMP asserted attorney-client privilege and work product protection and to overrule certain deposition objections. The predominant privilege issue as framed by the

Parties is whether DBMP's litigation positions in a prior preliminary injunction proceeding effected an "at issue" waiver of privilege. Due to the scope and complexity of the privilege issues, on February 16, 2023, the Bankruptcy Court appointed retired Judge Forrest D. Bridges as an independent, third-party discovery referee (the "Discovery Referee") to resolve privilege disputes, address deposition objections, determine the applicability of the crime-fraud and at-issue waiver exceptions to attorney-client privilege and/or work product doctrine, and review documents withheld on privilege grounds. At the time of the Discovery Referee's appointment, more than 4,000 documents were in dispute.

After receiving briefing and argument, the Referee eventually issued two reports recommending, as relevant, that the Bankruptcy Court overrule certain deposition objections and compel disclosure of certain privileged documents based on at-issue waiver. *See* Disc. Referee's R. & R. No. 1 (Doc. No. 2706; Adv. Pro. No. 21-03023, Doc. No. 216; Adv. Pro. No. 22-03000, Doc. No. 190; Adv. Pro. No. 22-03001, Doc. No. 160), filed March 4, 2024 (the "Initial Report"); Final Disc. Referee R. & R. (Doc. No. 3139; Adv. Pro. No. 21-03023, Doc. No. 370; Adv. Pro. No. 22-03000, Doc. No. 306; Adv. Pro. No. 22-03001, Doc. No. 276), filed April 24, 2025 (the "Final Report"). The Final Report provided privilege and disclosure recommendations for approximately 65 percent of the 4,131 documents, offered no recommendations for roughly 1,459 documents, and addressed the crime-fraud exception, at-issue waiver, the sufficiency of the privilege logs, and the application of the attorney-client privilege.

The Bankruptcy Court then reviewed DBMP's objections to the Discovery Referee Reports. (Doc. No. 3212; Adv. Pro. No. 21-03023, Doc. No. 383; Adv. Pro. No. 22-03000, Doc. No. 321; Adv. Pro. No. 22-03001, Doc. No. 292.) Following full briefing and argument by the Parties, on March 16, 2026, the Bankruptcy Court (after over five years of privilege litigation)

issued the Privilege Order. In reaching its decision, the Bankruptcy Court conducted a de novo, in camera review of more than 3,000 documents. The Bankruptcy Court concluded that a limited at-issue waiver had occurred as to certain materials, that a number of the documents were not privileged, and that approximately 2,518 of the documents remained privileged. Based on these findings, the Bankruptcy Court ordered disclosure of 573 documents in whole or in part. The Debtor has agreed to produce 105 of the 573 documents, and the Bankruptcy Court granted reconsideration and found that 14 documents were fully privileged under Federal Rule of Civil Rule 59(e), leaving roughly 450 documents subject to this appeal.

The Bankruptcy Court also held that approximately 150 disputed documents had to be produced because they were drafts of documents that were ultimately disclosed in final form—such as drafts of letters to third parties. Priv. Order ¶¶ 222-24, Doc. No. 1-1 at 123-124. However, it did "not allow disclosure of work product or what amounts to attorney communications located in draft comments." *Id*. ¶224. In doing so, the court relied on *In re Grand Jury Procs*., 727 F.2d 1352 (4th Cir. 1984) and *United States v. (Under Seal)*, 748 F.2d 871 (4th Cir. 1984)). *See id*. ¶¶ 211-16, 223. The Bankruptcy Court stayed its effective date for 30 days (then later "until 30 days after resolution of any post-ruling relief sought by the Defendants as to the Order"), in part "to permit any post-ruling motions or interlocutory appeals." *Id*. ¶ 344.

The Debtor moved to reconsider and amend the Privilege Order. The Bankruptcy Court issued its Reconsideration Order on May 20, 2026, clarifying certain statements in the Privilege Order and amending its designation of certain disputed documents as non-privileged but otherwise denying reconsideration and leaving intact the Privilege Order's framework for assessing at-issue waiver and draft waiver. *See* Order and Opinion Granting Stay of Order 24 (Doc. No. 3435; Adv. Pro. No. 21-03023, Doc. No. 430; Adv. Pro. No. 22-03000, Doc. No. 368; Adv. Pro. No. 22-

03001, Doc. No. 338). Debtor then filed the pending motion for leave to appeal with this Court, together with a formal notice of appeal of the Privilege Order as amended and clarified by the Reconsideration Order. *See* Doc. Nos. 1-2.

In addition to the appeal to this Court, DBMP filed a Request for Certification of Direct Appeal of Order Partially Granting and Sustaining and Partially Denying Plaintiffs' Privilege Motion and Defendants' Objection ("Request for Certification"). Case No. 20-30080, Doc. No. 3494. On June 24, 2026, the Bankruptcy Court heard oral argument on the request and declined to certify a direct appeal to the Fourth Circuit. The Asbestos Claimants submitted a proposed order, which the Court adopted on June 29, 2026 (the "Certification Order"). Case No. 20-30080, Doc. No. 3527. Among other grounds, the Bankruptcy Court refused to certify a direct appeal on the question of the appropriate "at-issue" privilege waiver standard because "even if a court cites a governing rule . . . the actual application is fact specific." Doc. No. 4 ¶ 4.

With respect to its substantive privilege rulings, the Bankruptcy Court carefully and comprehensively analyzed the applicable standard for when a party has waived the attorney client privilege through an "implied waiver." *See* Priv. Order ¶¶ 225-90, Doc. No. 1-1 at 124-66. Finding that "[t]he Fourth Circuit has never directly addressed what constitutes at-issue waiver," *id.* ¶ 245, the court thoroughly and thoughtfully discussed the long history of "at-issue waiver" cases in other circuits, including the often-cited cases of *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975) and *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, a Third Circuit opinion explicitly rejecting *Hearn*, 32 F.3d 851 (3d Cir. 1994). The court sought to determine (again in the absence of guidance from our Court of Appeals) a standard that both recognizes the importance of protecting privileged communications and gives a fair and effective meaning to the universally accepted concept that

waiver can – impliedly – occur without disclosure (i.e., an issue cannot both be used as a sword and protected by the shield of privilege). *See* Priv. Order ¶¶ 225, 288; Doc. No. 1-1 at 124, 165.

Ultimately, the court described the "State of Mind At-Issue Waiver" standard it applied to the disputed documents as follows:

> 287. Thus, the Court does not adopt *Hearn*, *Rhone*, or the Plaintiffs' rule. The Court rather starts with the acceptance that a legal state of mind submission can waive privilege as to the topic of that submission, which is accepted by courts rejecting parts of *Hearn*'s test, and is somewhat accepted by even the Third Circuit under its version of anticipatory waiver. But, crucially, not every state of mind submission necessarily triggers a waiver under this rule.
>
> 288. Particularly, first, a state of mind submission where there is a legal nexus to the submission, such that it is *ex facie* and objectively assurable that their attorney's advice constitutes much of the information underpinning that submission. But, crucially, not even there yet. Then, fairness comes in to the privilege objector's, Defendants', benefit. Fairness is both about (1) the centrality of that submission to the dispositive or critical issues in a case, unless untested, and the (2) necessity of piercing privilege to rebut the assertion.
>
> 289. The Court believes this is line with the Fourth Circuit precedent of concrete consistent rules that are fact specific and case law specific to not be over-inclusive or underinclusive.[1]

Priv. Order ¶¶ 287-89; Doc. No. 1-1 at 165.

The Bankruptcy Court then applied that standard to the thousands of documents in dispute, agreeing with Plaintiffs that Defendants' subjective affirmative submissions, at least when combined with their explicitly raised good faith affirmative defenses, constituted an at-issue waiver for certain topics. However, the Court found that "the scope of the resulting waiver is much

---

[1] The Bankruptcy Court further explained its reasoning, saying "The Court acknowledges this may not be the most concrete rule available; however, the Court adopts it in this case given two facts. First, the wide availability of warnings that a client receives regarding how putting their state of mind at-issue or affirmatively raising good faith can raise the possibility of waiver, both within bankruptcy specifically, and outside of it. Second, the Court's belief that the Defendants' lawyers knew, or should have known, about these warnings, given the quality and number of lawyers representing the Defendants, and thus must have informed the Defendants that taking these actions may result in a waiver of attorney-client privilege." *Id*. at ¶ 290, Doc. No. 1-1 at 166.

narrower than what the Plaintiffs argued for." *See* Priv. Order ¶ 296; Doc. No. 1-1 at 169. The court delineated "three general topics which the submissions, through their explicit references, have put at-issue: specifically, the Defendants' various subjective states of mind" as to the Funding Agreement, the defendants' corporate restructuring's overall effect on the Asbestos Claimants, and the inclusion of Millwork & Panel within DBMP. *Id.* ¶ 298; Doc. No. 1-1 at 170.

The Debtor phrases the "primary question" on appeal as "whether the Bankruptcy Court in its Privilege Order erred in declining to adopt and apply the *Rhone-Poulenc* rule for at-issue waiver of attorney-client privilege, 32 F.3d at 863." Also, it states that the appeal "presents the question whether the Bankruptcy Court erred in holding that drafts of attorney work product prepared in anticipation of litigation must be produced, under the Fourth Circuit's draft-waiver rule for attorney-client privilege, because Defendants contemplated that a final version of the document might be made public or otherwise shared with third parties." The Debtor seeks reversal of the Privilege Order, apart from its ruling as to approximately 100 documents held not privileged that it "agreed to produce notwithstanding any appeal." Stay Order ¶ 16.

## III. DISCUSSION

At the outset of the Court's analysis of the request for an interlocutory appeal, it is important to note that the Court is not issuing a ruling on the merits of the Bankruptcy Court's Privilege Order, even though it credits the effort and thoughtfulness of the Bankruptcy Court as discussed above (and is comfortable with the case proceeding under the existing orders, of course subject to the possibility of a later appeal).[2] Rather, the question now before the Court is whether

[2] With respect to ordering the disclosure of document drafts, DBMP argues that the Bankruptcy Court addressed that issue *sua sponte* without full briefing and failed to consider whether the documents could properly be withheld based on "attorney work product" protection rather than based on the "attorney-client" privilege (although the Bankruptcy Court's ruling appears to offer

it is necessary and appropriate for this Court to step in and rule on thoroughly considered discovery rulings midstream in a bankruptcy case that already spans six years. The Court concludes it is not.

As described above, there are three elements that must be established for the Court to certify an interlocutory appeal, which are: (1) the appeal involves a controlling question of law; (2) regarding which there is substantial ground for difference of opinion; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). While the Court's finding that the third requirement has not been met is dispositive, the Court will address each element in turn.

A. <u>Does the Appeal Involve a Controlling Question of Law?</u>

The first part of the Section 1292(b) analysis asks whether the appeal involves a controlling question of law. The Parties dispute this element, primarily by taking different positions on how to frame the relevant "controlling question." According to the Debtor, the "controlling" question is the "pure legal question" of what is the correct standard for deciding when an "at issue waiver" of the attorney client communication has been effected. So, Debtor contends that the resolution of that legal question will be "controlling" as to the relevant standard and need not be dispositive of the entire case. The Asbestos Claimants ask the Court to use a broader lens. They argue that the identification of the legal standard is only the first step in analyzing whether any particular document may be withheld from disclosure (they contend the other step involves factual determinations related to the documents) and that, in any event, the privilege dispute is not controlling as to the ultimate merits of any of their claims or the resolution of the case as a whole.

that work product protection). In any event, the Court's ruling here is not intended to suggest that the Bankruptcy Court, either on its own initiative or otherwise, should not reconsider its ruling if necessary to ensure that "attorney work product" is properly protected.

The Court finds that while there is some support for both positions, neither is entirely correct. *Compare Hodge v. N. Carolina Dep't of Adult Correction*, No. 5:19-CV-478-BO, 2026 WL 1557471, at *1 (E.D.N.C. June 2, 2026) ("A controlling issue of law must dispose of the litigation no matter how it is resolved, and 'a question of law would not be controlling if the litigation would necessarily continue regardless of how that question were decided.'") (internal citations omitted) *with Fung Retailing Ltd. v. Toys "R" Us, Inc.*, 593 B.R. 724, 731 (E.D. Va. 2018) (an issue of law qualifies as "controlling" when "either (1) reversal of the bankruptcy court's order would terminate the action, or (2) determination of the issue on appeal would materially affect the outcome of the litigation.") (internal citations omitted). If DBMP is correct that resolution of a legal issue need only "advance" the litigation to be "controlling" then it would simply conflate the first and third elements of the Section 1292(b) analysis. However, if the Court were to accept the Asbestos Claimants' argument that to be "controlling" the entire litigation must rise or fall on a single disputed legal question then effectively no question of privilege – which would rarely if ever be case dispositive – could be the subject of an interlocutory appeal, which is inconsistent with Supreme Court precedent. *See Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110–11, 130 S. Ct. 599, 607, 175 L. Ed. 2d 458 (2009) (suggesting that a privilege issue can be the subject of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) "when a privilege ruling involves a new legal question or is of special consequence" and otherwise meets the requirement of materially advancing the termination of the matter).[3] Thus, the framing of the legal question argued to be

[3] In *Mohawk*, the Supreme Court also explained that attorney-client communications are unlikely to be significantly chilled by a delayed appeal: "One reason for the lack of a discernible chill is that, in deciding how freely to speak, clients and counsel are unlikely to focus on the remote prospect of an erroneous disclosure order, let alone on the timing of a possible appeal. Whether or not immediate collateral order appeals are available, clients and counsel must account for the possibility that they will later be required by law to disclose their communications for a variety of

"controlling" must be broader than simply the question of resolving a legal standard itself, but may be narrower than the entire litigation. *See In re Bestwall LLC*, No. 3:20-CV-103-RJC, 2022 WL 67469, at *4 (W.D.N.C. Jan. 6, 2022), *aff'd,* 71 F.4th 168 (4th Cir. 2023) ("Courts take a pragmatic view of finality in the bankruptcy context, such that "orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case." (finding that adversary proceedings are considered discrete disputes)).

Applying that analysis here, the "controlling legal question" must be more than "what is the governing 'at issue' privilege waiver standard" and extend (at the very least) to resolving whether all or nearly all of the disputed documents are protected by a privilege that hasn't been waived. DBMP contends that if the Court applies *Rhone* then all of the documents will be privileged because, as it interprets *Rhone*, it has not "affirmatively" put its counsel's legal advice at issue by specifically invoking a "reliance on counsel" defense. Unsurprisingly, the Asbestos Claimants disagree, arguing that *Rhone* can be (and has been) interpreted more broadly such that the Bankruptcy Court would need to rereview all the disputed documents even if the "*Rhone* standard" applied. And the Bankruptcy Court in this case has already twice noted that *Rhone* would not necessarily be dispositive as to all the privilege issues. *See* Priv. Order ¶277; Doc. No. 1-1 at 158. ("[T]he Court disagrees that *Rhone* always allows, much less encompasses, waiver absent disclosure or description, as the [Debtor] argue[s]."); Doc. No. 3 at 5-6 (quoting the Preliminary Injunction Findings and Conclusions of Judge Whitley at ¶ 98, who stated, after referencing *Rhone* with approval, that "DBMP and New CertainTeed cannot have it both ways" and their assertions of "attorney client and work product privileges may not be used as both shield and sword.").

reasons—for example, because they misjudged the scope of the privilege, because they waived the privilege, or because their communications fell within the privilege's crime-fraud exception." *Mohawk*, 558 U.S. at 110.

Accordingly, whether or not the Court's decision on the legal standards governing "at-issue" privilege waivers would be "controlling" is decidedly uncertain (even if it is considered to be a "pure" legal issue rather than a mixed question of law and fact as to particular documents). However, this Court need not decide the thorny (and unsettled) question of the proper scope of the *Rhone* standard here. Because it finds that DBMP has not established that the termination of the bankruptcy (or any one of its separate Adversary Proceedings) would be materially advanced by deciding the privilege questions presented (the independent third element), the Court need not finally decide whether DBMP has established the first element of "a controlling legal question."

B. Is there a Substantial Difference of Opinion on the Question?

The second element in the Section 1292(b) analysis is whether or not there is a "substantial difference of opinion" on the "controlling legal question." Assuming again that the disputed legal question is the standard for finding an "at-issue" privilege waiver, this element is obviously satisfied. One need look no further than the Bankruptcy Court's more than 40 page "Legal Discussion" and analysis of "Implied Waiver and At-Issues Waiver" to come to the swift conclusion that the law in this area is divergent, unsettled and has not been decided in the Fourth Circuit. And this was candidly recognized by the Bankruptcy Court itself. *See* Priv Order ¶ 226, Doc. No. 1-1 at 124 ("Courts disagree widely as to what constitutes and what is required for what the Parties call, 'at-issue waiver', to occur."). Therefore, the Court finds that there are grounds for a "substantial difference of opinion" on the legal question sought to be appealed.

C. Will the Appeal Materially Advance the Ultimate Termination of the Litigation?

The final element of the Section 1292(b) standard requires the Court to find that even if a question of law is "controlling" and subject to a substantial difference of opinion, the resolution

of an interlocutory appeal will "materially advance the ultimate termination of the litigation." DBMP has failed to make that showing here.

Litigation is terminated in one of two ways – either with a decision on the merits of the disputed claims and defenses or through a settlement among the parties. Neither will likely be materially advanced by resolution of this interlocutory appeal. First, DBMP argues that "at-issue" waiver has been (and continues to be) the central issue in discovery in this case and that after an interlocutory appeal "the parties will be able to approach future proceedings in this case, and settlement negotiations, on sound discovery footing." Doc. No. 2 ¶¶ 38-39. While the Court's ruling on the interlocutory appeal might possibly alter the settlement positions of the Parties (although the impact of any ruling on the merits is unknown as discussed below), it is unclear whether doing so would make an ultimate settlement more or less likely. That is, any ruling bolstering one side's view of its litigation prospects necessarily also affects the other side's view, but perhaps not in the same way or in equal measure. Indeed, after the appeal a party might be emboldened to take a more aggressive settlement posture that moves the Parties further apart than the current circumstance in which *both* Parties need to factor into their risk assessments that the Bankruptcy Court's discovery rulings might be overruled on appeal. Also, allowing the disclosure of documents to go forward might make settlement more likely if the Asbestos Claimants find that the documents are not as beneficial or relevant as they had hoped. Finally, any ruling by this Court would not completely settle the issue; rather, it would only be a way station for further appeals to the Fourth Circuit and then perhaps to the Supreme Court to resolve the split among the circuits. So, the "losing" side would be unlikely to fully revise its settlement position until all appeals are resolved, a date perhaps far in the future.

With respect to DBMP's argument that it needs an answer to the question on appeal to avoid continuing to litigate the issue in the Bankruptcy, the response is straightforward. DBMP says it needs clarity, but – through a yearslong thoughtfully executed process in the Bankruptcy Court – it already has a clear answer. It just doesn't like the ruling. So, the way forward in the Bankruptcy is for all Parties to recognize the Bankruptcy Court's privilege standards (subject, of course, to the right to appeal at the conclusion of the proceedings) and apply those standards consistently, cooperatively, and efficiently without continuing to belabor the issue.

As for "materially advancing" a decision on the merits, DBMP has proffered no evidence (and in fact makes no argument) that applying a different "at-issue" privilege waiver standard would affect how the merits claims in the Bankruptcy or Adversary Proceedings are decided. The Court understands that DBMP wants to protect its "privileged" communications but, beyond general conclusory statements of "irreparable injury" and the purported "influence" of an appeal on "litigation strategy," it has not explained to the Court why and how the documents will impact the merits. The issue now before the Court is simply whether the documents must be produced in discovery. Production is far different than admission at trial. For example, if the Bankruptcy Court independently determines that the challenged restructuring transaction is lawful or if it finds the Debtor is not insolvent because of the substance of the Funding Agreement (as argued by DBMP), then the communications between counsel and the Debtor may have little relevance, much less be dispositive in the Bankruptcy. Thus, there has been no showing that the resolution of the interlocutory appeal will "materially advance" the termination of the Bankruptcy through a ruling on the merits.

In sum, the Bankruptcy Court and the Parties have expended a tremendous amount of time and expense to reach a point in the discovery process where it appears that discovery can be fairly

completed, and the merits of the Parties' claims and defenses ultimately decided. This Court declines to delay that considerable progress with an interlocutory appeal that is unlikely to result in a much faster termination of the litigation either through settlement or on the merits.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

DBMP's Motion for Leave to Appeal Privilege Order (Doc. No. 2) is **DENIED.**

**SO ORDERED ADJUDGED AND DECREED**.

Signed: August 30, 2026

Kenneth D. Bell
United States District Judge